COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Humphreys and Senior Judge Willis
Argued at Alexandria, Virginia


FRANCES BROADDUS CRUTCHFIELD AND
  HENRY RUFFIN BROADDUS
                                                    OPINION BY
v.        Record No. 1037-04-2              JUDGE JERE M.H. WILLIS, JR.
                                                    MAY 3, 2005
STATE WATER CONTROL BOARD,
  DEPARTMENT OF ENVIRONMENTAL QUALITY AND
  THE COUNTY OF HANOVER, VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Melvin R. Hughes, Jr., Judge

            Benjamin A. Thorp IV (William B. Ellis; Ellis Thorp & Jewett,
            PLLC; Ellis & Thorp, PLLC, on briefs), for appellants.

            John K. Byrum, Jr., Assistant Attorney General (Jerry W. Kilgore,
            Attorney General; Roger L. Chaffe, Senior Assistant Attorney
            General; Rick R. Linker, Assistant Attorney General, on brief), for
            State Water Control Board and Department of Environmental
            Quality.

            Barbara M. Rose, Deputy County Attorney (Sterling E. Rives, III,
            County Attorney, on brief), for the County of Hanover.

            *Amici Curiae*:  The Chesapeake Bay Foundation, Inc. and
            The Sierra Club (Christopher C. Spencer; Robert L. Wise; Robyn
            P. Ayres; Bowman and Brooke LLP, on brief), for appellants.


        Frances Broaddus Crutchfield and Henry Ruffin Broaddus (appellants) appeal a final order

of the trial court finding that the State Water Control Board (SWCB) properly issued a Virginia

Pollution Discharge Elimination System (VPDES) permit to Hanover County (the County) for the

discharge of treated wastewater from the County's Totopotomy Wastewater Treatment Plant into

the Pamunkey River.  On appeal, appellants contend the trial court erred by holding:  (1) the SWCB

did not violate State Water Control Law or its own regulations when issuing the VPDES permit

authorizing a new discharge of oxygen consuming pollutants to a stream that already violates Water Quality Standards for dissolved oxygen without first demonstrating that the discharge is consistent with a plan that will achieve those Water Quality Standards; and (2) the decision by the SWCB to issue the VPDES permit was supported by "substantial evidence" when it rested entirely on an assumption—contradicted by evidence—that effluent limitations that were predicted not to substantially degrade water quality in small, flowing, non-tidal streams would also not substantially degrade water quality in a large, slow-moving, tidal river such as the Pamunkey.

We affirm the trial court's decision that the SWCB properly issued the VPDES permit.

### Background

Appellants own Newcastle Farm, an 878 acre property located in Hanover County. The farm has several miles of river frontage along the Pamunkey River. In 1997, the County applied for a VPDES permit to discharge up to ten million gallons per day of treated wastewater into the Pamunkey River from an outfall located on appellants' farm. Prior to issuing the permit, the SWCB solicited comments from various state and federal agencies. The United States Environmental Protection Agency and the Virginia Department of Health indicated they had no objections to the issuance of the permit as drafted.

In January 1999, the SWCB held a public hearing on the draft permit. Appellants presented evidence at the hearing, and they submitted written comments to the SWCB. The comments explained appellants' opposition to the project based on their concerns that the proposed discharge would adversely affect the river's already impaired water quality, would cause damage to fish and other wildlife, and would deprive them of recreational uses of the river. Numerous other persons provided both oral and written comments concerning the permit. The SWCB staff provided to the SWCB a summary of these comments and the SWCB staff responses to the comments prior to the final consideration of the SWCB whether to issue the permit.

One of the major issues raised in the public comment period was the impact of the proposed discharge on the dissolved oxygen (DO) levels of the Pamunkey River. The Pamunkey River near the proposed discharge point had a known history of naturally occurring low DO levels, particularly in the summer months. The SWCB staff believed the extensive marshes in the area were the likely cause of the low DO conditions. Since 1987, the SWCB staff used effluent limitations of 10 mg/l CBDO5, 10 mg/l TSS, and 3 mg/l TKN for discharges that do not meet water quality standards due to swamp and marsh-like conditions. According to the "Summary of Issues and [SWCB] Staff Response" document, these "10-10-3" limitations "establish a level of treatment which in the best professional judgment of the [SWCB]'s staff will not further contribute to lower dissolved oxygen levels in the receiving stream, regardless of the size of the discharge." In addition, the SWCB staff had used this same standard in the past to establish effluent limitations for three other discharges into the Pamunkey River.

Following the public comment period, the SWCB staff reconsidered the permit limitations for DO and recommended a change in the minimum permit level from 5.0 mg/l to 6.5 mg/l. The staff concluded that under warm weather conditions the limit of 6.5 mg/l would ensure that the DO in the discharge was at or above the background level in the river. Appellees referred to this as a self-sustaining limit—one that will not cause or contribute to water quality violations.

On April 28, 1999, the SWCB granted the County the VPDES permit at issue in this case. We note that the permit expired on April 28, 2004. However, the County timely applied for renewal of the permit and, pursuant to 9 VAC 25-31-70(B), the expired permit continues as "fully effective and enforceable" pending decision on the renewal application.[1]

_____

[1] 9 VAC 25-31-70 provides in part:

> A. The permit shall expire at the end of its term, except that the conditions of an expired permit continue in force until the effective date of a new permit if:

Appellants appealed the issuance of the permit to the trial court pursuant to the Virginia Administrative Process Act. Code §§ 2.2-4000 through 2.2-4033. Appellants argued to the trial court that the SWCB violated its own regulations by issuing the permit. Appellants contended that SWCB regulations required the SWCB to determine that the proposed discharge will not cause or contribute to violations of water quality standards, impair uses of the river, or harm human, plant or animal life. Appellants argued that the SWCB failed to make these findings and that the record lacked substantial evidence to support the issuance of the permit. Further, appellants asserted that any discharge into the river would contribute to the low DO problems in the river.

The trial court found that, upon approving the permit, the SWCB imposed self-sustaining limits which are "supposed to establish a level of treatment of the effluent discharge that will not cause or contribute to water quality violations" in the Pamunkey River. The court stated that, according to the SWCB, the DO levels of the treated discharge are so low that it exerts "no oxygen demand load on the water in the river." Furthermore, the court noted that the SWCB contends that the determining factor of the impact to the river water is not how many pounds of nutrients are discharged, but the concentration of the nutrients in the discharge.

Citing several technical memoranda in the agency record, the trial court found that evidence supported the conclusion by the SWCB that with the permit limits in place, the effluent from the wastewater treatment plant would "not further contribute to lower dissolved oxygen levels" in the river. The trial court further held that an SWCB regulation pertaining to new discharges to

1. The permittee has submitted a timely application . . . which is a complete application for a new permit; and

2. The [SWCB], through no fault of the permittee, does not issue a new permit with an effective date on or before the expiration date of the previous permit.

B. Permits continued under this section remain fully effective and enforceable.

- 4 -

officially designated impaired waterways was inapplicable to this case because the regulation does not prohibit new permits where the discharge will not cause or contribute to violation of water quality in the receiving water. See 9 VAC 25-31-50(C)(9). The trial court concluded that the SWCB issued the permit in compliance with the applicable provisions of state and federal law, including the water quality standards. Appellants appealed the trial court's decision to this Court.

Analysis

"In an appeal to the circuit court from a decision by an agency, the burden is upon the appealing party to demonstrate error." Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998). Judicial review of an agency decision is limited to determining (1) "[w]hether the agency acted in accordance with law;" (2) "[w]hether the agency made a procedural error which was not harmless error;" and (3) "[w]hether the agency had sufficient evidential support for its findings of fact." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1998). The review of an agency's factual findings "is limited to determining whether substantial evidence in the agency record supports its decision." Avante at Lynchburg, Inc. v. Teefey, 28 Va. App. 156, 160, 502 S.E.2d 708, 710 (1998). Under the substantial evidence standard, the reviewing "court may reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (quoting B. Mezines, Administrative Law § 51.01 (1981)). "The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted).

In accordance with familiar principles of appellate review, "we review the facts in the light most favorable to sustaining the [SWCB]'s action," Atkinson v. Virginia Alcohol Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985), and "take due account of the

- 5 -

presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 2.2-4027.

State Water Control Law prohibits the discharge of pollutants into the waters of Virginia except in compliance with a permit issued by the SWCB. Code § 62.1-44.5. Under the authority of the water control law, the SWCB issues VPDES discharge permits to municipal sewage treatment plants. Code § 62.1-44.19. Here, substantial evidence supported the trial court's ruling that the SWCB issued the permit in accordance with the applicable water control laws and regulations.

The agency record consists of numerous technical memoranda addressing stream analyses and effluent permit recommendations. During the permitting process, the SWCB staff consulted with federal and state agencies such as the United States Environmental Protection Agency, the Virginia Department of Health, and the Virginia Department of Game and Inland Fisheries. These agencies submitted written comments concerning the draft permit, which were made a part of the agency record. In response to concerns expressed during the public comment period, the SWCB staff undertook further evaluation of the draft permit and recommended more stringent permit requirements to ensure that the dissolved oxygen in the discharge was at or above background level in the river. The SWCB staff made presentations to and answered questions from the SWCB concerning the permitting process. The SWCB also considered the written testimonial and scientific evidence contained in the agency record prior to issuing the permit.

In addition, several technical memoranda prepared by the SWCB staff support the established permit limits. One document entitled "Advisory Notification of Effluent Limits for Swamp and Marsh Waters" by A.J. Anthony recommended the 10-10-3 limit, stating that staff

> have found over the past years, through application of modeling technology to small streams, that the [10-10-3] limits are *representative* of effluents that are "self-sustaining;" that is: such an effluent will not normally violate the stream standard even if the stream consists of 100% effluent.

Furthermore, the SWCB had used these same permit limits for other sewage treatment plants. In addition, the document entitled "Summary of Issues and [SWCB] Staff Response" stated that the 10-10-3 recommended permit levels "establish a level of treatment which in the best professional judgment of the [SWCB] staff will not further contribute to lower dissolved oxygen levels in the receiving stream, regardless of the size of the discharge."

"Where the issue is whether there is substantial evidence to support findings of fact, great deference is to be accorded the agency decision." Johnston-Willis, 6 Va. App. at 246, 369 S.E.2d at 9. "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enterprises, Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

The decision of the SWCB addressed the potentially harmful impacts of the discharge by imposing stringent permit limits. As a result, SWCB acted within the scope of its authority in issuing the permit. Furthermore, the decision to issue the permit was supported by substantial and credible evidence in the agency record. Therefore, the trial court did not err in affirming the decision of the SWCB.

Appellants produced before the trial court and have argued before this Court items of evidence not laid before the SWCB. Indeed, much of this evidence postdates the issuance of the permit. Appellants rely on Code § 2.2-4027 as authority for the courts to consider this evidence.

The pertinent portion of the statute states:

> Where there is no agency record so required and made, any necessary facts in controversy shall be determined by the court upon the basis of the agency file, minutes, and records of its proceedings under [Code] § 2.2-4007 or [Code] § 2.2-4019 as augmented, if need be, by the agency pursuant to order of the court or supplemented by any allowable and necessary proofs adduced in court . . . .

Thus, Code § 2.2-4027 allows the record to be supplemented by "any allowable and necessary proofs adduced in court" only where there is no agency record. See School Board v. Nicely, 12 Va. App. 1051, 1062 n.2, 408 S.E.2d 545, 551 n.2 (1991) ("[T]his language only allows circuit courts to assemble a record where no agency record exists, and still the court must accept whatever findings the agency made in its files, minutes, records or elsewhere."). Clearly, there is such an agency record here. Moreover, the standard of judicial review provided by the Virginia Administrative Process Act is review of the agency decision in the light of the record before it.

> When the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did.

Code § 2.2-4027. Furthermore, to allow parties to freely supplement the agency record after the agency has rendered a decision would authorize trial of the merits of the case *de novo*, resulting in the trial court making, not reviewing, the administrative decision.

> A case subject to the standard of review outlined in Code § [2.2-4027] [and] . . . the factual issues on appeal [therein] are controlled solely by the agency record. The reviewing court is not free to take additional evidence, even at the request of one of the parties. Therefore, under the VAPA, the circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court. In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal.

Nicely, 12 Va. App. at 1061-62, 408 S.E.2d at 551 (citations and footnote omitted). Accordingly, the post-agency decision evidence is not appropriate evidence for consideration of whether the SWCB properly issued the permit. We note, however, that consideration of the permit renewal application will involve the merits of the permit to be considered based on the current situation.

Pursuant to Code § 62.1-44.19(A), an owner of a sewage treatment works shall apply to the SWCB for a permit to discharge into state waters. Code § 62.1-44.19(B) provides that the SWCB "shall approve such application if it determines that minimum treatment requirements will be met and that the discharge will not result in violations of water quality standards." In addition to the statutory requisites, regulations promulgated by the SWCB delineate the procedures and requirements to be followed in the VPDES permitting process. One of these regulations provides that no VPDES permit shall be issued:

> To a new source or a new discharger, if the discharge from its construction or operation will cause or contribute to the violation of water quality standards. The owner or operator of a new source or new discharger proposing to discharge into a water segment which does not meet applicable water quality standards or is not expected to meet those standards even after the application of the effluent limitations required by the law and [Code] §§ 301(b)(1)(A) and 301(b)(1)(B) of the [federal Clean Water Act], and for which the [Virginia Department of Environmental Quality] has performed a pollutants load allocation for the pollutant to be discharged, must demonstrate before the close of the public comment period, that:
>
> a. There are sufficient remaining pollutant load allocations to allow for the discharge; and
>
> b. The existing dischargers into that segment are subject to compliance schedules designed to bring the segment into compliance with applicable water quality standards.

9 VAC 25-31-50(C)(9).

Appellants contend that this regulation prohibits new discharges of pollutants to waters that violate applicable standards for that pollutant unless a pollutant load allocation analysis is performed and it demonstrates that the Water Quality Standard will be achieved. We find that the trial court correctly held that the first sentence of the regulation controls. The SWCB had before it substantial evidence that the proposed effluent, itself being "self-sustaining" and meeting water quality standards, would not "cause or contribute to the violation of water quality

- 9 -

standards." Appellants contend that the effluent authorized by the permit would contain oxygen consuming materials, thus contributing to the pollution of the river. However, the issue is not the raw quantity of such materials, but the concentration of the nutrients in the discharge and the resulting water quality. Evidence in the record provides a basis for the conclusion of the SWCB that with the established permit limits, the treated effluent will not contribute to lower DO levels in the river.

Appellants also argue that the second sentence of the regulation required a pollutant load allocation, an assessment of the proposed effluent against that allocation, and a determination that the proposed operation would contribute to bringing the river as a whole into water quality compliance. We find that the trial court correctly held that the making of such an allocation is a predicate condition to the application of the second sentence, not a consequence of that sentence. The record discloses the making of no such allocation, hence the second sentence of the regulation does not apply here. Furthermore, the proposed effluent being compliant with water quality standards, its infusion will tend to ameliorate *pro tanto* the overall quality of the river.

For these reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>