COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Petty and Senior Judge Bumgardner
Argued at Richmond, Virginia


LOKESH BABU VUYYURU, M.D.
                                      MEMORANDUM OPINION[*] BY
v.      Record No. 0610-07-2                  JUDGE WILLIAM G. PETTY
                                                 JANUARY 15, 2008
VIRGINIA BOARD OF MEDICINE


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

Thomas H. Roberts for appellant.

Ishneila I.G. Moore, Assistnat Attorney General (Robert F.
McDonnell, Attorney General; David E. Johnson, Deputy Attorney
General; Jane D. Hickey, Senior Assistant Attorney General, on
brief), for appellee.


In this appeal from an agency decision, appellant, Lokesh Babu Vuyyuru, M.D. seeks

reversal of the Virginia Board of Medicine's ("the Board") revocation of his medical license. While

Vuyyuru raises twenty-six questions on appeal, his argument, taken as a whole, addresses only two:

whether the Board's findings were supported by substantial evidence, and whether Vuyyuru was

afforded due process before the Board.[1] For the reasons stated below, we hold the Board did not

err, and we affirm the revocation of Vuyyuru's license to practice medicine.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As to the questions presented that were not addressed in the argument section of his
brief, Vuyyuru stated: "In many instances to ask the question is to answer it[;] therefore
although not each question is addressed further in the brief, and due to the brevity enjoined,
respondent asserts and preserves each error referenced above." While pithy, this statement in no
way comports with of our Rules of Court. According to Rule 5A:20(e), the appellant's opening
brief must contain "[t]he principles of law, the argument, and the authorities relating to each
question presented." Because "[w]e do not deem it our function to comb through the record . . .
in order to ferret-out for ourselves the validity of [the parties'] claims[,] " Fitzgerald v. Bass, 6

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to the Board, the party prevailing below. Hilliards v. Jackson, 28 Va. App. 475, 479, 506 S.E.2d 547, 549 (1998). We also "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Crutchfield v. State Water Control Bd., Dep't of Envtl. Quality, 45 Va. App. 546, 555, 612 S.E.2d 249, 254 (2005) (citing Code § 2.2-4027).

After receiving several complaints, the Board summarily suspended Vuyyuru's license to practice medicine, based upon its finding that his continued practice of medicine could be a substantial danger to the public health and safety, pursuant to Code § 54.1-2408.1. The Board also instituted proceedings for a formal hearing regarding the revocation of Vuyyuru's license. Following a formal hearing and after considering evidence and testimony from both the Attorney General and Vuyyuru, the Board revoked Vuyyuru's medical license. The Board based its action on several findings of fact. Specifically, the Board found that Vuyyuru's misconduct led to the performance of unnecessary medical procedures, physical harm to patients, and, in one case, a patient's death. The Board also found that Vuyyuru violated several regulations relating to the administration of conscious sedation and recordkeeping regarding controlled substances. Moreover, the Board determined that he had refused to provide copies of requested records to investigators from the Department of Health Professions.

Accordingly, the Board revoked Vuyyuru's medical license. The Chesterfield County Circuit Court affirmed the Board's decision. This appeal followed.

Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988), we will not address those issues for which Vuyyuru did not favor us with a legal argument.

- 2 -

II. ANALYSIS

We begin with the applicable limitations upon our review of this case. In appeals of administrative decisions, in accordance with settled legal precedents, "the burden is upon the appealing party to demonstrate error." Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998). Moreover, our review is limited to determining "whether the agency acted in accordance with law," "whether the agency made a procedural error which was not harmless error," and "whether the agency had sufficient evidential support for its findings of fact." Crutchfield, 45 Va. App. at 553, 612 S.E.2d at 253; see also Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1998).

A. Substantial Evidence

Vuyyuru argues that the Board's factual determinations were not supported by substantial evidence. In reviewing an agency decision, we give deference to an administrative agency's factual determinations, and review them only to ascertain whether they are supported by substantial evidence. Code § 2.2-4027. Our Supreme Court has explained that "[t]he 'substantial evidence' standard . . . is designed to give great stability and finality to the fact-findings of an administrative agency. The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'" Virginia Real Estate Com'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 126 (1983) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (emphasis added)). Thus, "[u]nder this standard . . . the court may reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" Id. (quoting B. Mezines, Administrative Law § 51.01 (1981)) (emphasis in original).

Here, the record contains an abundance of relevant evidence supporting the Board's factual findings. The Board conducted a formal hearing and listened to the testimony of

- 3 -

numerous witnesses, including the testimony of expert witnesses who testified that Vuyyuru's actions violated the applicable standards of care. Moreover, the Board reviewed profuse medical records and other documentary evidence involving the care of several specific patients as well as information arising from inspections of Vuyyuru's medical office. Because we are unable to say upon a review of this evidence that a reasonable mind would necessarily come to a different conclusion than that reached by the Board, we will not disturb the Board's factual findings on review.

### B. Due Process

Vuyyuru argues that the Board did not afford him due process in the revocation proceeding. "[T]he minimum requirements of constitutional due process which must attend administrative hearings [are] timely and adequate notice, the right to confront adverse witnesses and present one's own evidence, the right to the assistance of retained counsel, and an impartial decision maker." Hladys v. Commonwealth, 235 Va. 145, 147, 336 S.E.2d 98, 99 (1988) (citing Goldberg v. Kelly, 397 U.S. 254, 271 (1970)).

Our standard for reviewing the application of due process standards in an administrative setting is well settled. Although we generally give great deference to an agency decision, "[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have a special competence, i.e., the common law or constitutional law, there is little reason for the judiciary to defer to an administrative interpretation." Johnston-Willis, 6 Va. App. at 243-44, 369 S.E.2d at 8. Accordingly, when a litigant contends that he was deprived of due process during an administrative proceeding, we review the administrative proceedings *de novo*, giving no deference to the judgment below. See id.; see also Dep't of Prof'l & Occupational Regulation v. Abateco Servs., 33 Va. App. 473, 479, 534 S.E.2d 352, 355 (2000).

- 4 -

Specifically, Vuyyuru contends that the Board violated his due process rights because (1) the amended statement of particulars, which notified him of the charges against him, was inadequate because it "consisted of compound charges in a conclusory factual accusatory fashion"; (2) the Board permitted non-board members to attend a closed session; (3) the Board was represented by an attorney from the Attorney General's office; (4) the proceedings were tainted by the pre-hearing distribution of evidence; and (5) Board members who were part of the decision to suspend Vuyyuru's license also took part in the revocation hearing. We discuss each in order.

### 1. Notice

According to the United States Supreme Court, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." Carey v. Piphus, 443 U.S. 247, 259 (1978). In furtherance of that goal, procedural due process rules exist to "guarantee[] that a person shall have reasonable notice and opportunity to be heard before any binding order can be made affecting the person's rights to liberty or property." McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995).

Code § 2.2-4020(B) codifies the due process notice requirement in administrative hearings. Pursuant to Code § 2.2-4020(B)(iii) the Board was required to give Vuyyuru "reasonable notice of the . . . matters of fact and law asserted or questioned by the [Board]." Vuyyuru argues that the Board failed to give him reasonable notice of the charges against him because, he alleges, the Board's findings were "at fatal variance with the charges alleged against" him and that the charges as stated in the Board's amended statement of particulars were vague and overbroad.

An accused, whether in a criminal or civil context, "is entitled to have stated in plain and unequivocal terms" the charges against him. Casper v. City of Danville, 160 Va. 929, 932, 169

- 5 -

S.E. 734, 735 (1933). In order to fulfill that requirement, the statement or bill of particulars "should be directed at those charges to which the [Board] expects to introduce supporting testimony." Id. at 933, 169 S.E. at 735.

Here, the Board fulfilled that requirement because its amended statement of particulars referenced particular incidents regarding specific patients or detailed instances of recordkeeping violations and stated exactly what statutes or regulations the Board believed Vuyyuru may have violated. Moreover, there was no variance between the statement of particulars and the Board's findings. Instead, the Board determined the Vuyyuru had violated the same provisions that were listed in the amended statement of particulars. Simply put, there is nothing in the record to indicate that Vuyyuru did not have sufficient reasonable notice to prepare his defense and answer to the Board's allegations at the formal hearing.

## 2. Attendance Of Non-Board Members

Vuyyuru also argues that the Board's decision to allow people who were not members of the Board of Medicine to attend the Board's closed session violated his due process right to a neutral decision-maker. Vuyyuru relies on Virginia Board of Medicine v. Fetta, 244 Va. 276, 421 S.E.2d 410 (1992), as authority for this argument; however, his reliance is misplaced. Initially, we note that the issue decided in Fetta was whether the circuit court, upon hearing an appeal from an agency decision, had the authority to remand a case to the administrative agency with instructions to dismiss the proceedings against Dr. Fetta. Id. at 279, 421 S.E.2d at 411. Our Supreme Court held that while circuit courts cannot "undertake . . . agency action directly," they have the power to "specify exactly what shall be done on remand." Id.

In its opinion, the Supreme Court noted as an aside that the trial court had correctly decided that the board violated Code § 54.1-110(A) because it allowed only four board members

to participate in the formal hearing along with the hearing officer.[2]  At the time Fetta was decided, Code § 54.1-110(A) provided that the hearing officer could hear the case alone or with the full board.[3]  Here, however, Vuyyuru challenges the attendance of Board staff and the Assistant Attorney General assigned to advise the Board on procedural matters at the closed session, a different legal question from that decided in Fetta.

Further, Vuyyuru's argument is without merit because the Board is specifically authorized to "permit nonmembers to attend a closed meeting if such persons are deemed necessary or if their presence will reasonably aid the public body in its consideration of a topic that is a subject of the meeting."  Code § 2.2-3712(F).  In this case, the Board properly followed its procedure for allowing nonmembers to sit in on the meeting:  a member of the Board made a motion to include nonmembers in the closed session that was seconded and approved by a vote of all of the Board members present.

Moreover, "'[w]ithout a showing to the contrary, state administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'"  Hladys, 235 Va. at 148, 366 S.E.2d at 100 (quoting Withrow v. Larkin, 421 U.S. 35, 55 (1975)).  The presumption that public officials have acted correctly may only "be overcome by evidence of bias or improper conduct."  Id. (citations omitted).  Vuyyuru did not make a showing of prejudice on this record.

---

[2] The issue that the Court decided in Fetta was "whether the circuit court abused its discretion in" dismissing the charges against Fetta, instead of remanding the case to the board for disposition.  Fetta, 244 Va. at 280, 421 S.E.2d at 412.  Thus, the Court's actual holding in Fetta has no application here.

[3] The current version of Code § 54.1-110(A) reads, in pertinent part:  "When a hearing officer presides, the regulatory board shall determine whether the hearing officer is to hear the case alone or with a panel of a health regulatory board convened pursuant to § 54.1-2400 or whether the board is to hear the case with the hearing officer."

3.  Representation By An Assistant Attorney General

Vuyyuru contends that his right to a neutral decision maker was *per se* infringed upon because an Assistant Attorney General advised the Board on procedural matters, while another Assistant Attorney General prosecuted the case against him.  For the following reasons, we hold that this argument is also without merit.

The General Assembly has directed the Attorney General to "render[] and perform[]" all legal service for "every state . . .  board . . . including the conduct of all civil litigation in which any of them are interested . . . ."  Code § 2.2-507(A).  The statute also provides that:

> The Attorney General may represent personally or through one or more of his assistants any number of state departments, institutions, divisions, commissions, boards, bureaus, agencies, entities, officials, courts, or judges that are parties to the same transaction or that are parties in the same civil or administrative proceeding and may represent multiple interests within the same department, institution, division, commission, board, bureau, agency, or entity.

Id.

The outcome of this case is controlled by a prior decision of our Supreme Court.[4]  In Hladys, 235 Va. at 145, 366 S.E.2d at 98, the Court addressed the issue of the Attorney General's office both advising a state agency and prosecuting a case before it.  The Court determined that the Attorney General correctly complied with the mandate of then Code

---

[4] In making his argument, Vuyyuru relies upon Legal Ethics Opinion No. 1038 (1988).  There, the Committee considered a situation in which an assistant attorney general was assigned to advise a professional regulatory board while another assistant attorney general was assigned to prosecute a case before the regulatory board.  While the Committee did not find any impropriety or violation of ethical standards, it did give suggestions to preserve "the appearance of fairness," including:  (1) that the assistant attorney general advising the board should not sit in on deliberations; (2) that the two assistant attorneys general should not collaborate or communicate with each other regarding the case; and (3) that the two assistant attorneys general should be supervised by different lawyers at the Attorney General's office.  However, according to Rule 6:IV(10), legal ethics opinions are "advisory only."  They "have no legal effect and [are] not binding on any judicial or administrative tribunal."

§ 2.1-121 to "render 'all legal service' in civil matters for the Commonwealth and all its agencies." Id. at 148, 366 S.E.2d at 100. After noting that "[t]he official conduct of assistant attorneys general is entitled to a presumption of honesty and fairness" the Court held:

> [i]n the absence of a showing of bias or improper conduct [on the part of the assistant attorneys general], we will assume that their conduct was proper and that the impartiality of the tribunal was unimpaired. No showing of bias or improper conduct was made in this case, and the institutional connection between the two assistant attorneys general involved in this proceeding did not, *per se*, impair [appellant's right to procedural due process].

Id. at 149, 366 S.E.2d at 100.

Here, Vuyyuru has not shown bias or improper conduct. Rather, he asserts that the mere fact that two assistant attorneys general were involved in this case requires reversal. In light of the Supreme Court's holding in Hladys, we must disagree.

### 4. Pre-hearing Distribution Of Evidence

Vuyyuru argues that the proceedings before the Board were tainted by the pre-hearing distribution of evidence among the members of the Board. According to Code § 2.2-4020(C), presiding officers conducting formal administrative proceedings have the authority to, *inter alia*, "regulate and expedite the course of the hearing." In this case, the presiding officer chose to expedite the hearing by circulating the copious evidentiary exhibits prior to the hearing. We cannot say that he abused his discretion by doing so.

Moreover, even assuming *arguendo* that the hearing officer's actions were an abuse of discretion, Vuyyuru has not met his burden to show that such error was not harmless. See J.B. v. Brunty, 21 Va. App. 300, 305, 464 S.E.2d 166, 169 (1995) (A party alleging that an agency failed to comply with required procedure "must demonstrate such failure was not mere harmless error."). According to Fetta, 244 Va. at 283, 421 S.E.2d at 414, procedural violations that "could have had a significant impact on the ultimate decision so as to undermine the 'substantiality of

the evidential support' for the factual findings" are the kind of procedural violations that are not harmless and require reversal. However, Vuyyuru has made no showing of that kind of error here.

### 5. Presence Of The Same Board Members At Both The Summary Suspension Hearing And The Revocation Hearing

Finally, Vuyyuru argues that the presence of the same Board members at both the summary suspension hearing and the revocation hearing deprived him of his due process right to a neutral decision-maker.

Again relying on Fetta, 244 Va. at 276, 421 S.E.2d at 410, Vuyyuru argues that the attendance of Board members who were familiar with the case from the summary suspension hearing tainted the decision-making process. As discussed *supra*, the Fetta decision is inapposite to this case. Indeed, our Supreme Court was very careful to differentiate the situation in Fetta from cases "deal[ing] with the presumption of regularity of administrative decisions, and . . . [determining whether] a member of an administrative agency who has prior knowledge of the case may still participate in the agency's decision." Id. at 280, 421 S.E.2d at 412.

Here, as in Hladys, 235 Va. at 148, 366 S.E.2d at 100, the "presumption that public officials have acted correctly" applies. This presumption may only be "overcome by evidence of bias or improper conduct, but no such showing was made in the case before us." Id. (citation omitted). Once again, Vuyyuru cannot make that showing on this record.

### III. CONCLUSION

For the reasons explained above, we affirm the Board's decision to revoke Vuyyuru's license to practice medicine.

Affirmed.

- 10 -