# CIRCUIT COURT OF THE CITY OF RICHMOND

Mirant Potomac River, L.L.C.

v.

State Air Pollution
Control Board et al.

March 13, 2008

Case No. CL07-2933

BY JUDGE MELVIN R. HUGHES, JR.

In this case an electric power generating company has appealed an award of a permit by the State Air Pollution Control Board. The permit sets limits on the emission of sulfur dioxide from the company's Potomac River Generation Station in Alexandria, Virginia. The appellant, Mirant Potomac River, L.L.C., owns the Station. The appellee, the State Water Control Board, according to the authority and duties prescribed in Va. Code §§ 10.1-1300 to 10.1-1326, grants permits to companies such as Mirant which govern the emission of regulated air pollutants. Mirant complains that the Board issued it an unlawful permit lacking in supporting technical data and seeks a remand for the Board's reconsideration. Following some preliminary hearings on various motions, the case has been briefed and argued on its merits.

From the record and argument, the course of events leading up to the appeal can be summarized as follows. Beginning with a September 25, 2006, meeting of the Board followed by a series of meetings and negotiations by interested parties, on May 23, 2007, the Board issued Mirant a state operating permit which set the limit of sulfur dioxide emission "in the range of 3800

tons per year." Prior to the Board's decision, the City of Alexandria, the Virginia Department of Environmental Quality (DEQ), and the Board all worked to develop their own version of a state operating permit.

In the past, the Board has delegated authority to issue permits to the DEQ many times. In this case, the Board departed from its usual practice and issued the permit in question itself. As noted, this followed a series of meetings and negotiations between the City of Alexandria, DEQ, and Mirant and public hearings where the various options were put before the public for comment. The City of Alexandria which has long objected to the Station due to surrounding residential and commercial neighborhoods was permitted at the direction of the Board to negotiate an acceptable permit. However, this process was not successful. As talks continued, DEQ and Mirant continued to develop modeling data on air emissions limitations that DEQ contended were protective of Natural Ambient Air Quality Standards (NAAQS) developed by the federal Environmental Protection Agency as required under the federal Clean Air Act, 42 U.S.C. § 7409. Indeed, DEQ and Mirant had agreed on a short term consent order until a comprehensive state permit would issue in October 2007. When the Board rejected DEQ's recommendation of such a consent order, DEQ and Mirant continued to evaluate a predictive modeling procedure which would allow emission levels to be adjusted based on daily weather reports. Normally, DEQ runs complicated computer models to simulate various technical factors and weather and recommends a permit level that would satisfy NAAQS. Here, instead of directing DEQ to perform its usual analysis, the Board ended by directing DEQ to calculate an annual permit based on a particular value. This value was derived from a study that was part of earlier consent order negotiations.

Prior to the Board's decision to grant Mirant the permit at issue, DEQ provided multiple scenarios in which Mirant could meet the NAAQS on a temporary basis. DEQ stressed to the Board that the chosen value it ultimately used was not intended for annual extrapolation and that there was no indication that this value's use in the modeling approach was any better than other computer models. So, DEQ urged the Board to implement a short term consent order during which time it would run its analysis to suggest an annual rate. It estimated that the recommended permit value would be between 6984 and 8493 tons per year, which was well over the 3813 annual ton limit the Board ultimately utilized in the permit. Again, in arriving at the limits the Board ultimately chose, the Board required the DEQ to use a consultant's modeling analysis from a previous study.

While conceding there is evidence in the record which supports the Board's decision, Mirant contends that, notwithstanding agency specialized competency, the circumstances present procedural issues, namely, failure to follow proper procedures which are reviewable as a matter of law. Mirant says that the Board's failure to observe required procedures requires the permit to be reversed. It contends that the Board's action departed from science and law and was a product of political considerations of the City of Alexandria and members of the Board.

While the Board in this appeal takes issue with whether its May 23, 2007, decision, standing alone, is a case decision subject to judicial review, it contends that, otherwise, the Board's action complies with law. It observes, correctly, that given Mirant's admission that substantial evidence is present, the Court's review must be in the light most favorable to support the Board's action taking into account the presumption of agency regularity, its experience and competency over the matters regulated, and the law. See *Crutchfield v. State Water Control Bd.*, 45 Va. App. 546, 553 (2005).

As mentioned, Mirant contends that the Board's action in granting this permit is unlawful, not so much in the sense that there is no evidence to support it, but rather that the Board failed to comply with required procedures. Procedural errors by administrative agencies is one of the grounds for review, for judicial review in such appeals is limited to determine (1) "[w]hether the agency acted in accordance with law; (2) [w]hether the agency made a procedural error which was not harmless error, and (3) [w]hether the agency had sufficient evidential support for its findings of fact." *Johnston Willis v. Kenley*, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1998).

Procedural defaults, as seen by Mirant, can be summarized thus. One, as has been noted, the Board took the unprecedented step of issuing the permit itself rather than adhere to its normal approach of having the DEQ study and enter into preliminary consent orders before DEQ would issue the permit. Second, directing that the City of Alexandria would have the right to participate in permit negotiations thereby granting it essentially a veto. Third, allowing certain Board members to write the permit themselves. Fourth, the Board's refusal to follow three suggested consent orders agreed upon by Mirant and DEQ during the permitting process. Fifth, the manner allowed for public participation in the process.

The court has said that procedural violations that "could have had a significant impact on the ultimate decision so as to undermine the 'substantiality of the evidential support' for the factual findings" are not mere harmless error. *Virginia Board of Medicine v. Fetta*, 244 Va. 276, 283, 421 S.E.2d 410, 414 (1992). While Mirant questions the Board's departure from

its established practice of having the DEQ study and issue permits, it does not question that, though empowered to delegate such authority under the statutes and regulations made and provided, the Board can reserve the right to exercise such delegated authority itself. See Va. Code § 10.1-1307.2 (power to delegate authority to the Director of DEQ), 9 VAC 5-170-180B (Board's right to assume authority over delegated powers). So to say that this permitting process by the Board's issuance of the permit itself in this instance is a rarity does not of itself make the process legally infirm. The authority for the Board to act as it did is there.

So too is the case with the various Mirant-DEQ agreed upon consent orders which were not adopted by the Board. The Board in its Response Brief, page 16, captures the essence of why Mirant's contentions with respect to the various consent orders have no merit:

> There is nothing in Code § 10.1-1186 that specifically gives the Director the authority to enter into a consent order. That authority is implied from the express authority to issue a special order. Just as the Director has authority to settle a matter and enter into a consent order by virtue of his Code § 10.1-1186 authority to issue special orders without consent, so does the Board have authority to settle a matter and enter into or approve a consent order by virtue of its order and enforcement authority under Va. Code §§ 10.1-1307(D) and 10.1-1309.

Finally, there is the matter of the participation of the City of Alexandria throughout the process, the public hearings, and Mirant's criticism that the Board's prevailing voting members lacked objectivity in the award of the permit.

The scope of the powers and duties of the Board are outlined in Va. Code § 10.1-1307. Subsection E sets out the criteria the Board must use in, *inter alia*, approving permits. Throughout the statute as read, the General Assembly has evinced an intent to grant the Board with broad authority "to control . . . all sources of air pollution in the Commonwealth." It has the authority to adopt regulations controlling emissions into the atmosphere, grant local variances, hold hearings on the causes of air pollution, *inter alia*. It shall consider "facts and circumstances relevant to the reasonableness of the activity involved and the regulations proposed to control" air pollutants. Under this statutory framework, it does not seem unreasonable to grant the City of Alexandria, a known long time opponent of the Station, an opportunity to propose its version of the permit to be considered and to suggest that Mirant

and the City work at coming to an agreement about permit limits for the Board's ultimate consideration. Alexandria, like others, was given the chance for public comment. Although the extent the record may show the Board allowed Alexandria to participate both in negotiations and input its version of what a permit should look like, the court cannot find any legal impediment on the Board to not allow this. It can even be said that the invitation extended was necessary for the Board to inform itself as to the best course of action, a motivation which is sanctioned by its powers and duties as defined. As it turned out, the Board adopted its own permitting standard with the use of the ENSR consultant study using a modeling approach approved by the EPA as acceptable. This is in keeping with the legal requirement on the Board to regulate and bring air pollutant sources in compliance with all applicable emission standards. See 9 VAC 5-80-850.A.2. So, an examination of all the assigned procedural errors does not reveal any impact on the fact that there is ample evidence before the Board to justify the action it took to grant the state operating permit.

Given that, under Va. Code § 2.2-4027, the burden is on the appellant, Mirant, to demonstrate an error of law and the court can find none, the decision of the Board on this permit will be affirmed.