# CIRCUIT COURT OF THE CITY OF NORFOLK

Toshiba Fentress

v.

Virginia Department
of Social Services

July 6, 2011

Case No. CL11-325

By Judge Mary Jane Hall

This matter came before the Court on the Appeal of Toshiba Fentress ("Appellant") from a decision of the Virginia Department of Social Services (the "Agency") issued on December 10, 2010, sustaining the disposition of "Physical Neglect – Abandonment – Level Two." The Court finds that the Agency's failure to provide an oral and written explanation of the family assessment procedure to Appellant constituted a procedural error that was not harmless error. For that reason, as more fully set forth herein, the Court sets aside the Agency's disposition and remands the matter to the Agency for dismissal of the charge.

*Procedural History and Factual Background*

On December 28, 2009, the Agency received a Child Protective Services complaint alleging that Taijuan Fentress, born January 18, 1995, may have been neglected by his mother. The Agency determined that the referral was a valid complaint of child abuse or neglect. The Agency made a disposition of "Founded – Physical Neglect – Abandonment – Level Two" on January 21, 2010. That determination was upheld following a local conference. Appellant filed her appeal to the Commissioner of the Department of Social Services, which conducted an evidentiary hearing on October 20, 2010, and upheld the disposition by a written opinion dated December 10, 2010.

The Agency's decision includes the following findings of fact:

1. The Appellant's son was arrested for shoplifting. The Appellant failed to pick her son up on the evening he was arrested. The child was placed into foster care.

2. The next day, the Appellant refused to take custody of her son because of his numerous behavioral problems, including violence against his siblings. The Appellant made no alternative plans for the care and custody of her son.

3. The Appellant's failure to take custody of her son, and/or failure to secure an appropriate placement which did not involve foster care constitutes abandonment, as that term is defined to include "demonstrating no interest or intent of returning to take custody of the child."

Hearing Officer Decision at 7 (Record at 009).

Respecting Appellant's failure to pick up her son on the evening of his arrest, the Hearing Officer wrote that "there was some level of miscommunication" and noted: "Had this been the only refusal to accept care and custody of her son, the disposition would likely be unfounded." *Id.* at 6 (Record at 008).

The Decision refers to the testimony of social worker Tori Whitley, who testified that she recalled that Darlene Smith told Appellant on December 29th that she would have a founded abandonment case if she did not take the child home. *Id.* at 4 (Record at 008). The record does not reveal who Darlene Smith is, other than "Other(s) present during the interview." Record at 166. Her presence, however, suggests that she was an agency representative. The Decision also recites that Appellant "denied ever being told that a neglect charge was a possibility." The Hearing Officer made no finding of fact as to whether Appellant was or was not advised that she potentially faced a founded disposition of abandonment if she failed or refused to take custody of her child.

At the hearing on October 20, Appellant challenged Tori Whitley's testimony that Darlene Smith told her that she would have a founded abandonment case against her.

FENTRESS: Okay. I was not ever told that if I did not take him home that an abandonment charge was going to be founded against me. But what date and time was this and is there a written record of this statement being made to me?

WHITLEY: Well that is what you would see on . . . it says 12/29 at 3:35 p.m. . . . . Where it says Darlene Smith, Janice Douglas and you were here and that is when we discussed what was going on with your son.

FENTRESS: Can I read that? "Ms. Fentress arrived to the agency for a formal interview concerning the allegations of abandonment of her son Taijuan. All aspects of the involved parties were explained to Ms. Fentress. Social worker informed Ms. Fentress of the CPS investigating piece of the case, while Nina Painter briefly explained foster care involvement. Wanda Smith explained any preventive services that may be involved and Janice Douglas explained court involvement.". . .

HEARING OFFICER: So you are asking her why Ms. Smith's statement was not documented?

FENTRESS: Yes.

WHITLEY: Okay. Well at the top it does say that the investigative piece was explained to you. And that you came to the agency to address the concerns of abandonment of your son. So you were told that you will have an abandonment case had you not taken your son home.

Record at 0021–0023, (*quoting Investigation Narrative 12/29/09*, in Record at 0166).

The evidence is clearly conflicted as to whether the Agency verbally advised Appellant of the consequences and possible outcomes of its investigation, and the Hearing Officer made no factual finding on that issue. Instead, the Hearing Officer found:

Whether or not the Appellant knew that an abandonment disposition would be entered as a result of her refusal to take her son back into her home is irrelevant. It does not appear that anyone involved in the investigation advised her that a neglect disposition would not be made, only that the child would enter foster care if an acceptable plan was not made.

Decision at 7 (Record at 009).

Social Worker Whitley admitted at that October 20 hearing that the Agency did not give Appellant any written explanation germane to the possibility of an abandonment charge against her other than a "pamphlet," which was not included in the Agency Record:

FENTRESS: And on this first page 17 [included in Record at 199] it says that there was a written notification given on 12/29. What is that referring to?

WHITLEY: That's referring to the pamphlet.

FENTRESS: The pamphlet?

WHITLEY: Yes.

FENTRESS: Did you give written notification of the charge on 12/29?

WHITLEY: When you say charge, I don't?

FENTRESS: For abandonment. Abandonment or the charge that it is founded or that was founded. Was there written notification given?

WHITLEY: No, but you were told verbally what we received and what the referral would be taken on.

FENTRESS: Okay. And the only written notification?

WHITLEY: Was the pamphlet, yes.

Record at 0020.

## Discussion

The provisions of the Virginia Administrative Process Act impose the burden on the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Those issues include "observance of required procedure where any failure therein is not mere harmless error." Va. Code § 2.2-4027. As the Court of Appeals has explained:

> Although what constitutes "mere harmless error" under the Administrative Process Act is not amenable to precise definition and inevitably requires a case-by-case analysis, it is clear that procedural violations that "could have had a significant impact on the ultimate decision so as to undermine the 'substantiality of the evidential support' for the factual findings" are not mere harmless error.

*Jones v. West*, 46 Va. App. 309, 327 (2009) (citations omitted).

Appellant in this case complains of the Agency's failure to provide her the written and oral explanations required by 22 VAC 40-705-90:

> Before conducting a family assessment or investigation, the child protective services worker shall explain the responsibilities and authorities of CPS so that the parent or other caretaker can be made aware of the possible benefits and consequences of completing the family assessment or investigation. The explanation must be provided orally and in writing.

22 VAC 40-705-90. As noted, the Hearing Officer made no factual finding on whether the Agency provided an oral explanation to Appellant (which she vigorously denies); and nothing in the record establishes that the Agency provided the required explanation. The "pamphlet" mentioned by Social Worker Whitley at Record 0020 may or may not be an explanation of the responsibilities and authorities of CPS. As it was not included in the record, in the light of Appellant's denial of any awareness of the consequence of the CPS investigation, and because the hearing officer made no finding that the Agency provided the written explanation, the Court concludes that Appellant has carried her burden of proving that it was not provided. Counsel for the Agency urges the Court to find any such failure to be harmless error.

The explanation that the regulation requires would have been given to Appellant during her first contact with the Agency, which was December 29, 2009, the day that she refused to take custody of her son. The Court determines that the failure to provide the required explanation certainly "could have had a significant impact on the ultimate decision." Appellant works as a community-based counselor for mental health clients. (Record at 52.) At oral argument, her counsel proffered that the existence of this founded child neglect disposition against her has had devastating consequences on her employment. As she stated in her post-hearing submission:

> Had Ms. Fentress received the information that she was supposed to receive about the process and what her rights and responsibilities were as provided for in 22 VAC 40-705-90, she would have made a different decision; and despite that fact that she feared for the safety of her two other children as well as herself, she would have taken Taijuan home with her that day. She would not have risked the job that she uses to provide for herself and her children if the process had been explained to her as it is mandated.

Post-hearing submission of Appellant (June 23, 2011).

The Court may consider only the Agency record and not additional evidence in this review. *See, e.g., Crutchfield v. State Water Control Bd.*, 45 Va. App. 546, 612 S.E.2d 249 (2005). The Court does not therefore

consider the representation that Appellant may not work in her field with a founded child neglect charge for any purpose other than the consideration articulated in *Jones v. West* as to whether the procedural violation "could have had a substantial impact on the ultimate decision." Because she had not yet taken the action that resulted in a founded charge at the time that the required explanation would have been given, it appears obvious that the explanation could have led to an outcome other than her continued refusal to take the child back. The Court cannot conclude that Appellant would have pursued a course of action that would lead to her losing her job had she been advised that her refusal would lead to that very result.

The Hearing Officer's conclusion that it was "irrelevant" whether Appellant knew about the possibility of an abandonment disposition was clearly erroneous. The Agency's failure to comply with 22 VAC 40-705-90 was not mere harmless error.

Appellant also complains of the Agency's failure to interview siblings, as required by 22 VAC 40-70-80. The Court concludes that she has not carried her burden as to that issue.

The Court does not conclude that this matter may be remanded to the Agency to cure its failure to comply with the required procedure. As the Court held in *Jones*:

> The harm done in this case to the fact-finding process by the local department's failure to tape record the interview with the alleged child victim cannot be corrected by a rehearing on remand. The clock cannot be turned back. Obviously, the same interview with S.J. cannot now be tape recorded.

*Jones v. West*, 46 Va. App. at 332. Likewise, the procedural error in this case could only be rectified if Appellant could receive an explanation about the consequences of her refusal to take custody of her son *before* she made that decision. For that reason, the Court remands the matter back to the Agency for dismissal and not for further proceedings.