COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Huff
Argued at Alexandria, Virginia

**PUBLISHED**

LIFECARE MEDICAL TRANSPORTS, INC.

                                                            OPINION BY
v.        Record No. 1586-13-4                   JUDGE GLEN A. HUFF
                                                            JUNE 24, 2014

VIRGINIA DEPARTMENT OF MEDICAL
 ASSISTANCE SERVICES

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Martin Bass, Judge

Victoria A.B. Willis (DurretteCrump, PLC, on brief), for appellant.

Elizabeth McDonald Guggenheim, Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General; Rita W. Beale, Deputy
Attorney General; Kim F. Piner, Senior Assistant Attorney General,
on brief), for appellee.

LifeCare Medical Transports, Inc. ("LifeCare") appeals a ruling of the Circuit Court of

the County of Stafford ("circuit court") affirming the October 23, 2009 decision by the Virginia

Department of Medical Assistance Services ("DMAS") denying LifeCare's request for relief and

affirming the overpayment determination in the amount of $367,178.  The circuit court affirmed

on the grounds that there was substantial evidence to support DMAS's decision, that the record

did not reveal an arbitrary or capricious decision in upholding collection of the overpayment

amount, and that DMAS had followed the applicable laws and regulations governing the

proceeding.

On appeal, LifeCare contends that the circuit court erred 1) in finding that DMAS acted

in accordance with the law; 2) in finding that DMAS did not make a procedural error and the

error was harmless; 3) in finding that DMAS had sufficient evidential support for its findings of

fact; 4) in finding the record did not reveal an arbitrary or capricious decision; 5) in denying the motion to open the record; and 6) in granting the motion to dismiss and failing to address the issue of detrimental reliance. For the following reasons, this Court affirms the decision of the circuit court.

## I. BACKGROUND

On appeal, "[w]e view the facts in this case 'in the light most favorable to sustaining the [agency's] action and take due account of the presumption of official regularity, the experience and specialized competence of the [agency], and the purposes of the basic law under which the [agency] has acted.'" Nat'l College of Bus. & Tech., Inc. v. Davenport, 57 Va. App. 677, 680-81, 705 S.E.2d 519, 521 (2011) (quoting Sentara Norfolk Gen. Hosp. v. State Health Comm'r, 30 Va. App. 267, 279, 516 S.E.2d 690, 696 (1999)). So viewed, the evidence is as follows.

LifeCare is a medical transportation provider, specializing in basic and advanced life support transports. Additionally, LifeCare provides specialty care, which involves "taking patients . . . with . . . ventilators or neonatal transports, and . . . also . . . wheelchair transports taking patients back and forth to doctors' offices."

DMAS is the state agency responsible for the administration of the medical assistance program known as Medicaid. Medicaid is a program funded by both the state and federal governments to provide medical assistance to the eligible and medically needy citizens of the Commonwealth of Virginia. Certain individuals may qualify as dually eligible meaning they receive benefits from both federal Medicare and state Medicaid. When a provider bills Medicare for services rendered to a dually eligible individual, "Medicare would pay based on its rules of

eligibility and provider rates, and the claim would then be electronically forwarded to Medicaid [DMAS] as a 'crossover' claim."[1]

LifeCare provides medical transportation services for Medicaid and Medicare/Medicaid eligible individuals in exchange for payment from DMAS under a provider participation agreement. After providing transportation services, LifeCare's "billing department will add in the charges based on the level of services [provided] and . . . submit [its] claim for payment" to Medicare. App. at 249. If Medicare elects to pay the claim, it will perform an "automatic crossover" wherein Medicare "send[s] that claim over automatically to Medicaid." App. at 250. After Medicaid receives the claim, it will "calculate the amount of payment that is to be made to [LifeCare] . . . ." Id. LifeCare then deducts the Medicaid payment from the unpaid balance on patient bills.

The federal Balanced Budget Act of 1997 authorized the Commonwealth to choose to limit its payment of Medicare coinsurance, deductibles or copayments to the Medicaid amounts as set forth in its State Plan. To take advantage of the authorization to limit payments, DMAS was required to amend the State Plan. That amendment required approval by the federal agency ultimately known as the Centers for Medicare and Medicaid Services ("CMS"). Federal regulations established the requirements for obtaining the necessary CMS approval of a State Plan change. 42 C.F.R. § 447.253 ("In order to receive CMS approval of a State plan change in payment methods and standards, [DMAS] must make assurances satisfactory to CMS that the requirements set forth . . . are being met."). The requirements for CMS approval of a State Plan amendment were established by federal regulation. Id. Compliance with certain notice provisions was required for CMS approval. 42 C.F.R. § 447.205.

---

[1] "Medicare 'crossover' claims are those claims for which the transportation provider first bills Medicare for payment, and then the claims automatically 'cross over' to Medicaid for any appropriate additional payment." App. at 84.

The General Assembly directed DMAS to take advantage of the cost saving measure allowed by the federal Balanced Budget Act of 1997. 1998 Va. Acts ch. 464 at 913-14. DMAS therefore proposed the necessary amendments to the State Plan. Notices were given which CMS found "satisfactory."

In accordance with the General Assembly's directive, DMAS submitted an emergency regulation effective July 1, 1998, 12 VAC 30-80-170, limiting the payment of crossover claims to the Medicaid rate. On June 30, 1998, DMAS sent a memorandum to all affected Medicaid providers regarding the change in reimbursement for dual eligible claims. CMS approved the amendments to the State Plan. The State Plan for reimbursements was thereby amended to meet the requirements of the federal Balanced Budget Act and regulations.

In July 2003, DMAS implemented a new Medicaid Management Information System ("MMIS"), which is the computer processing system through which payments are made to providers for Medicaid claims. On October 28, 2003, a memorandum was sent to all providers participating in the Virginia Medical Assistance Program (Medicaid) informing them of the new processing system for claims.[2] In particular, the memorandum indicated "the amount paid by Medicaid, in combination with the Medicare payment, will not exceed the amount Medicaid would pay for the service if it were billed solely to Medicaid." Eventually DMAS discovered a system error in its MMIS which had resulted in overpayment of ambulance providers' claims.

---

[2] The October 28, 2003 memorandum was addressed to "All Providers participating in the Virginia Medical Assistance Program." LifeCare, therefore, was an addressee of that memorandum. At oral argument LifeCare's counsel asserted that there was "no evidence in the record that LifeCare received" that memorandum. Viewing the facts in the light most favorable to the prevailing party (DMAS) and given the presumption of official regularity, Davenport, 57 Va. App. at 680-81, 705 S.E.2d at 521, the evidence supports that notice was given by DMAS to LifeCare. See Hagner v. United States, 285 U.S. 427, 430 (1932) ("absent contrary proof of irregularity, proof of a properly mailed document creates a presumption that the document was delivered and was actually received by the person to whom it was addressed").

The MMIS error failed to limit payment of the coinsurance and deductible amounts to the Medicaid rate when it crossed over to the Medicaid side for payment.

After the error in DMAS's MMIS was found, an independent accounting firm was engaged to verify the error in the MMIS and calculate the amounts that had been overpaid to each provider. After confirming the error, on March 1, 2008, DMAS sent a memorandum to all ground, air, and neonatal ambulance services, all managed care organizations and other providers participating in the Virginia Medical Assistance Program, advising them of the miscalculations and resultant overpayments. On September 15, 2008, DMAS requested that LifeCare repay the amount of $367,178, which represented the excess crossover claims that DMAS had erroneously overpaid to LifeCare for the period of April 15, 2005, through August 31, 2008.

On October 3, 2008, LifeCare appealed the overpayment determination and timely requested an informal fact finding conference ("IFFC"). An IFFC was held on December 12, 2008 and a decision issued on April 2, 2009, which affirmed DMAS's determination of overpayment. On May 1, 2009, LifeCare timely filed a notice of appeal challenging the IFFC decision. On June 20, 2009, an evidentiary hearing was held before Hearing Officer Carol S. Nance. On August 26, 2009, the hearing officer issued her recommendation affirming the findings of the IFFC. A final agency decision was issued on October 23, 2009, which accepted the hearing officer's recommendation.

On December 16, 2009, LifeCare filed a petition for appeal of the final agency decision in the circuit court. The circuit court heard arguments on January 28, 2011 and entered an order on August 5, 2013, upholding the final agency decision. The circuit court held that there was substantial evidence to support DMAS's decision, the record did not reveal an arbitrary or capricious decision in upholding collection of the overpayment amount, and DMAS had

followed the applicable laws and regulations governing the proceeding. The circuit court also dismissed LifeCare's motion to open the record. This appeal followed.

## II. ANALYSIS

LifeCare presents six assignments of error on appeal. Specifically, LifeCare contends that the circuit court erred 1) in finding that DMAS acted in accordance with the law; 2) in finding DMAS did not make a procedural error and the error was harmless; 3) in finding DMAS had sufficient evidential support for its findings of fact; 4) in finding the record did not reveal an arbitrary or capricious decision; 5) in denying the motion to open the record; and 6) in granting the motion to dismiss and failing to address the issue of detrimental reliance.

## A. Standard of Review

The Virginia Administrative Process Act ("VAPA") authorizes judicial review of agency decisions. Code § 2.2-4026. Specifically, "under the VAPA, the circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court." Sch. Bd. of Cnty. of York v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991). "On appeal of an administrative agency's decision, 'the party complaining of an agency action has the burden of demonstrating an error of law subject to review.'" Volkswagen of Am., Inc. v. Quillian, 39 Va. App. 35, 49, 569 S.E.2d 744, 751 (2002) (quoting Hilliards v. Jackson, 28 Va. App. 475, 479, 506 S.E.2d 547, 549 (1998)). On review, the court must interpret the facts "in the light most favorable to the agency." Hilliards, 28 Va. App. at 479, 506 S.E.2d at 549.

"The sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988); Code § 2.2-4027. "With regard to an agency's decision on legal issues, the standard of review to be applied on appeal depends upon the nature of the legal question involved." Quillian, 39 Va. App. at 50, 569 S.E.2d at 752 (citing Kenley, 6 Va. App. at

242, 369 S.E.2d at 7). "'If the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, [e.g.], the common law or constitutional law,' the court need not defer to the agency's interpretation." Chippenham & Johnston-Willis Hosps., Inc. v. Peterson, 36 Va. App. 469, 475, 553 S.E.2d 133, 136 (2001) (quoting Kenley, 6 Va. App. at 243-44, 369 S.E.2d at 8). In contrast, "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Kenley, 6 Va. App. at 244, 369 S.E.2d at 8. In such a case, "'judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion.'" Id. (quoting Virginia Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)).

### B. Improper Notice

First, LifeCare asserts that the circuit court erred in finding that DMAS acted in accordance with law. Specifically, LifeCare contends that DMAS failed to provide the required notice of the proposed 1998 amendment to the State Plan, as set forth in 42 C.F.R. § 447.205. DMAS contends that it complied with the requisite notice and that the amendment was approved by CMS. In addition to the approval of the State Plan amendment by CMS, DMAS relies on its publication of the amendment notice in the Virginia Register and its compliance with the VAPA, as demonstration of its compliance with all notice requirements.

42 C.F.R. § 447.256(a)(2) states "[i]n the case of State plan and plan amendment changes in payment methods and standards, CMS bases its approval on the acceptability of the Medicaid agency's assurances that the requirements of § 447.253 have been met . . . ." Under 42 C.F.R.

§ 447.253(h), whenever a Medicaid agency changes its methods or standards it must "provide

that it has complied with the public notice requirements in § 447.205 . . . ." The notice must

contain specific information, as follows:

> (1) Describe the proposed change in methods and standards;
> (2) Give an estimate of any expected increase or decrease in annual aggregate expenditures;
> (3) Explain why the agency is changing its methods or standards;
> (4) Identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes are available for public review;
> (5) Give an address where written comments may be sent and reviewed by the public; and
> (6) If there are public hearings, give the location, date and time for hearings or tell how this information may be obtained.

42 C.F.R. § 447.205(c). Additionally, the notice must "[a]ppear as a public announcement in

one of the following publications: . . . (ii) A State register similar to the Federal Register . . . ."

42 C.F.R. § 447.205(d).

DMAS is authorized by federal and state law to promulgate rules and regulations. See

42 C.F.R. § 431.10(b); Code § 32.1-325. Moreover, the VAPA governs the process by which

regulatory action is taken. Code § 2.2-4000 *et seq*. The federal Balanced Budget Act of 1997

amended the Medicaid statute by adding 42 U.S.C. § 1396a(n)(2), which states:

> In carrying out paragraph (1), a State is not required to provide any payment for any expenses incurred relating to payments for deductibles, coinsurance, or copayments for medicare cost-sharing to the extent that payment under subchapter XVIII of this chapter for the service would exceed the payment amount that otherwise would be made under the State plan under this subchapter for such service if provided to an eligible recipient other than a medicare beneficiary.

In response to the federal amendment, the Virginia General Assembly inserted paragraph

O into Item 335 of the 1998 Budget Bill, which provided:

> As authorized by section 4714 of the Balanced Budget Act of 1997 and section 1902(a)(10) of the Social Security Act, or other applicable federal law, payments for Medicare Part A and Part B

coinsurance for Medicaid covered services for all dual eligibles, including but not limited to Qualified Medicare Beneficiaries, shall be calculated based on the Medicaid rate. The State Plan and all necessary regulations shall be amended accordingly and shall be effective within 280 days of enactment of this provision.

Emergency regulations were prepared in May of 1998, signed by the Governor in June of 1998, and published in the Virginia Register in July of 1998 to carry out the mandate of the 1998 Budget Bill. 14 Va. Reg. 22 (Jul. 20, 1998). The publication in the Virginia Register satisfied each of the publication requirements of 42 C.F.R. § 447.205.[3] The notice of the emergency modification of the Medicaid State Plan was also published in the Richmond Times-Dispatch on May 28, 1998. Each publication of the emergency amendment to the State Plan referenced Code § 9-6.14:4.1 (since re-codified as Code §§ 2.2-4002 and 2.2-4006) exempting the amendment from the VAPA, to the extent that the action was for "fixing rates or prices" or to "meet the requirements of federal law or regulations."

Within several months of adoption of the emergency amendment to the State Plan, the notice process was repeated in the Virginia Register, including detailed publication notices and time deadlines for public comment. Moreover, DMAS sent out a memorandum to all existing providers announcing the change in law and payment methodology on June 30, 1998. Institution of the amended payment methodology, which went into effect in 1998, satisfied the applicable standards for emergency implementation. Thereafter, 12 VAC 30-80-170 was re-adopted

---

[3] The notice provision of 42 C.F.R. § 447.205(c)(4) required that the agency "identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes are available for public review." In the instant case the emergency notice provided contact information at DMAS where the regulation could be obtained. CMS approved the State Plan amendment, thereby indicating that they found DMAS's assurances of compliance with the applicable regulations, acceptable.

LifeCare further maintains that DMAS's notice of the amendment was defective in that it failed to "give an estimate of any expected increase or decrease in annual aggregate expenditures" as required by 42 C.F.R. § 447.205(c)(2). Those estimates, however, were included in the notice posted in the Virginia Register. In any event, the notice was acceptable to CMS, thereby satisfying the requirement of 42 C.F.R. § 447.205.

through the customary procedures, complying with all applicable regulations. Viewing the evidentiary record as a whole, substantial evidence supports the circuit court's finding that applicable laws and regulations were followed, including the provision of appropriate notice.

Moreover, on November 15, 2001, LifeCare signed a Transportation Provider Participation Agreement ("agreement"). In the agreement, LifeCare agreed to "comply with all applicable state and federal laws, as well as administrative policies and procedures of [the Virginia Medical Assistance Program ("VMAP")] as from time to time amended." Furthermore, the agreement provided "[s]hould an audit by authorized state or federal officials result in disallowance of amounts previously paid to the provider by VMAP, the provider will reimburse VMAP upon demand."

Considering these facts, the Department provided sufficient notice as required by the VAPA and 42 C.F.R. § 447.205. The agency record demonstrates that the Department promulgated and published the 1998 regulation in response to the mandate of the General Assembly, in order to comply with federal legislation authorizing the payment methodology change. DMAS complied with the applicable procedural requirements. Accordingly, the circuit court did not err in finding the Department acted in accordance with law.

### C. Procedural Error

Next, LifeCare contends that the circuit court erred in finding that DMAS did not make a procedural error and that the error was harmless. Specifically, LifeCare asserts that the circuit court erred in its review of the administrative evidentiary hearing wherein "[t]he Hearing Officer refused to consider the proffered written opinion from an Informal Fact Finding [conference] of another ambulance provider in which the providers had asserted that they had notified [DMAS] of the improper payment calculations as early as 2004." LifeCare argues the IFFC opinion would have provided evidence that DMAS received notice of overpayments in 2004 and,

therefore, DMAS's repayment claim would be time barred under Code § 32.1-313. DMAS responds that a determination of the admissibility of evidence is left to the sound discretion of the hearing officer and that there was no abuse of discretion in refusing to admit an opinion from a different IFFC. In the alternative, DMAS asserts that refusing to consider an unrelated IFFC opinion amounted to harmless error under Code § 2.2-4027. DMAS also contends Code § 32.1-313 is inapplicable because the overpayment claim against LifeCare is being pursued in an administrative proceeding, not a civil action.

Code § 2.2-4020(C) provides, "[t]he presiding officers at the proceedings may . . . (ii) receive probative evidence, exclude irrelevant, immaterial, insubstantial, privileged, or repetitive proofs . . . . " Evidentiary rulings at an administrative agency formal hearing, therefore, are within the discretion of the presiding officer. "[T]he rules of evidence are relaxed in an administrative proceeding . . . ." Williams v. Commonwealth Real Estate Board, 57 Va. App. 108, 130, 698 S.E.2d 917, 928 (2010). Under this relaxed standard, "[n]o reversible error will be found . . . unless there is a clear showing of prejudice arising from the [ruling of admissibility] or unless it is plain that the agency's conclusions were determined by the improper evidence, and that a contrary result would have been reached in its absence." Id. (quoting Va. Real Estate Comm'n v. Bias, 226 Va. 264, 270, 308 S.E.2d 123, 126 (1983)). The hearing officer, in the recommended findings, conclusions of law, and decision of hearing officer, explained the basis of her evidentiary ruling relating to the proffer of an IFFC opinion from another case. The hearing officer explained, "the only allegation [that DMAS had prior notice of overpayments] . . . was a hearsay proffer during an informal fact-finding hearing that is not of record, cannot be cited for precedential value, and is without evidentiary weight."

Moreover, the relevance of the excluded IFFC opinion, according to LifeCare, is that the date of the other IFFC would establish a point in time when DMAS was on notice of the

computation errors in its MMIS, thereby establishing the three-year recovery period for overpayment claims asserted pursuant to Code § 32.1-314 ("a civil action under this section shall be brought . . . within three years of the date when [the error was] . . . discovered"). As pointed out by DMAS, however, the instant action was brought as an administrative claim, not a civil action, and is therefore governed by the limitations period specified in Code § 32.1-325.1:1(B) ("The Director of [DMAS] shall collect . . . any amount owed . . . because of overpayment . . . within . . . four years [of the initial determination of overpayment].").[4] Accordingly, the limitations bar suggested by LifeCare is inapplicable, further supporting exclusion of the evidence by the hearing officer. The hearing officer did not abuse her discretion in excluding the IFFC opinion from an unrelated hearing and no showing has been made of clear prejudice or that a different result would have obtained, were it not for the evidentiary ruling.

In the case at bar, LifeCare's IFFC decision was issued on April 2, 2009. The evidence established in the agency record indicates that the dates of overpayment, at issue, began on April 15, 2005. Therefore, DMAS notified LifeCare within the applicable four-year limitations

---

[4] Code § 32.1-325.1:1(B), provides:

> The Director of Medical Assistance Services shall collect by any means available to him at law any amount owed to the Commonwealth because of overpayment for medical assistance services. Upon making an initial determination that an overpayment has been made to the provider pursuant to § 32.1-325.1, the Director shall notify the provider of the amount of the overpayment. Such initial determination shall be made within the earlier of (i) four years, or (ii) fifteen months after filing of the final cost report by the provider . . . .

Furthermore, in Finnerty v. Thorton Hall, Inc., 42 Va. App. 628, 631, 593 S.E.2d 568, 569 (2004) ("The trial court found that an 'initial determination' for purposes of Code §§ 32.1-325(A) and 32.1-325.1:1(B) refers to the agency's decision pursuant to an informal fact finding conference conducted under Code § 2.2-4019 . . . . We agree with the trial court's interpretation . . . ."), this Court determined that the initial determination date is the date when the IFFC decision is issued.

period under Code § 32.1-325:1.1(B). Accordingly, the circuit court committed no error in finding that the hearing officer did not make a procedural error and that if there were error it was harmless.

## D. Insufficient Evidence

LifeCare next asserts that the circuit court erred in finding that DMAS had sufficient evidential support for its findings of fact. Specifically, LifeCare contends that DMAS's Findings of Fact 4-6, 9-11, and 13 are unsupported by substantial evidence. LifeCare's arguments all rest on its contention that the notice and publication of the amendment's proposed changes failed to meet the standards contained in 42 C.F.R. § 447.205. DMAS contends that it complied with the requisite notice procedures.

"In a court's review of the sufficiency of the evidence to support the agency's decision, the determinations of issues of fact must be made upon the agency record." Va. Dept. of Soc. Servs. v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 701 (1998) (citing Code § 9-6.14:17). "Thus, the circuit court's review of issues of fact is limited to the agency record." Id. Additionally, in determining whether substantial evidence exists in the record to support DMAS's decision, this Court "may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Doe v. Va. Bd. of Dentistry, 52 Va. App. 166, 175, 662 S.E.2d 99, 103 (2008).

LifeCare's argument that the department's findings of fact 4-6, 9-11, and 13 are unsupported by substantial evidence relies on its first argument that DMAS failed to provide the required notice of the regulation amendment. In light of our ruling on the first issue, addressing the propriety of DMAS's amendment of the State Plan, we find that LifeCare's claims of insufficiency of the evidence are moot. Accordingly, the circuit court did not err in finding the Department had sufficient evidential support for its findings of fact.

E.  Arbitrary and Capricious

Next, LifeCare contends that the circuit court erred in finding the record did not reveal an arbitrary or capricious decision.  Specifically, LifeCare asserts that "[t]he record lacks the necessary factual support of [DMAS's] Findings of Fact rendering the action of [DMAS] arbitrary or capricious."  DMAS responds that the record supports its findings that the amendment complied with the requisite notice procedures and, therefore, DMAS did not reach an arbitrary or capricious decision.  After having determined that DMAS provided LifeCare with adequate notice regarding the change in law, we find that LifeCare's argument that DMAS reached an arbitrary or capricious decision is without merit.  Accordingly, the circuit court did not err in finding the record did not reveal an arbitrary or capricious decision.

F.  Motion to Dismiss and Detrimental Reliance

Additionally, LifeCare asserts that the circuit court erred in granting the motion to dismiss and in failing to address the issue of detrimental reliance.  Specifically, LifeCare argues that the Medicaid manual and federal Medicare standards address the issue of financial hardship and that the federal government permits relief for providers when the repayment would detrimentally harm the provider.  DMAS contends that equitable relief is not permitted under the VAPA and that LifeCare's argument is without legal authority.

Code § 32.1-313(A) provides

> [a]ny person, agency, or institution . . . that, without intent to violate this chapter, whether under contract or otherwise, obtains benefits or payments where the Commonwealth directly or indirectly provides any portion of the benefits or payments under medical assistance to which such person, agency, or institution is not entitled . . . shall be liable for (i) any excess benefits or payments received . . . .

See Code §§ 32.1-325.1 ("Director shall undertake full recovery") and 32.1-325.1:1 ("shall collect by any means available . . . any amount owed . . . because of overpayment . . .").  Federal

- 14 -

law has defined an overpayment as "the amount paid by a Medicaid agency to a provider which is in excess of the amount that is allowable for services furnished . . . ." 42 C.F.R. § 433.304. Additionally, under 42 C.F.R. § 433.312, the Department is required to refund the federal portion of the overpayment within one year of its discovery.

Most significantly, administrative law is statutory and not derived from the common law, which is the source of equitable relief. See Virginia Bd. of Med. v. Va. Physical Therapy Assoc., 13 Va. App. 458, 464, 413 S.E.2d 59, 63 (1991). "As a general rule, 'the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act.'" Id. (quoting Hinchey v. Ogden, 226 Va. 234, 239, 307 S.E.2d 891, 894 (1983)). Specifically, the doctrine of sovereign immunity "'protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities.'" Id. (quoting Hinchey, 226 Va. at 240, 307 S.E.2d at 894). LifeCare contends that equitable relief is permitted under the Medicaid Manual Utilization Review and Control, Chapter IV ("manual"). The manual expressly indicates, however, that "[p]roviders will be required to refund payments made by Medicaid if they are found to have billed Medicaid contrary to policy . . . ." The record contains no evidence that the manual allows relief "in cases of financial hardship."

LifeCare next argues that the circuit court improperly ignored the holding in Commonwealth v. Wash. Gas Light Co., 221 Va. 315, 269 S.E.2d 820 (1980), which applied the doctrine of equitable estoppel to the State Corporation Commission. Id. at 324, 269 S.E.2d 826. In that case, the Supreme Court expressly limited its holding and indicated "for purposes of this opinion only, we assume that the doctrine may be applied to the State Corporation Commission in a case such as this." Id. LifeCare cites no specific statutory language that authorizes equitable relief in the current matter. Unless expressly authorized, equitable defenses do not apply against

- 15 -

the Commonwealth in administrative proceedings.  See, e.g. Sink v. Commonwealth, 13 Va. App. 544, 547, 413 S.E.2d 658, 660 (1992) ("[W]e hold that the doctrines of laches and estoppel may not be employed to bar the state from exercising its governmental functions and that an agent of the Commonwealth may not waive the right of the Commonwealth to exercise its governmental function . . . ."); Manassas v. Bd. of Supervisors, 250 Va. 126, 131, 458 S.E.2d 568, 571 (1995) ("[C]ertain equitable defenses, such as laches, do not apply to state or local governments when acting in a governmental capacity."); Falls v. Virginia State Bar, 240 Va. 416, 418, 397 S.E.2d 671, 672 (1990) ("Because it is a state agency in the performance of a governmental function, estoppel does not apply to the State Bar.").  DMAS is acting in its governmental capacity by taking steps to collect, as required by state and federal law, an inadvertent overpayment.  Code §§ 32.1-325.1; 32.1-325.1:1; 32.1-313(A); 42 C.F.R. § 433.304. As such, LifeCare's argument for equitable relief is misplaced.

Although LifeCare asserts that the circuit court erred in granting a motion to dismiss, it offers no argument or citation of authorities.  To the extent, therefore, that the granting of a motion to dismiss was intended as a separate issue, not subsumed in other arguments, it is waived.  Rule 5A:20(d) (requiring appellant's brief to include "argument (including principles of law and authorities)").  Accordingly, the circuit court did not err in failing to address the issue of detrimental reliance.

### G.  Motion to Open the Record

Finally, LifeCare asserts that the circuit court erred in denying its motion to open the record.  Specifically, LifeCare contends that the circuit court erred by not including consideration of documents identified as Exhibit A, purporting to cover the terms of settlement of a civil action brought in the United States District Court, involving other medical transport companies and the mileage reimbursement rates paid in 1997.  LifeCare asserted by affidavit that

"LifeCare has been unable to locate its copy of the Consent to Settlement Agreement" and that "following closure of the record of the Formal Appeal, counsel secured a copy of the Consent to Settlement Agreement." LifeCare contends that opening the record to receive this evidence, after the administrative appeals have been concluded would serve the ends of justice by allowing LifeCare to invoke its rights under the terms of the consent to settlement agreement. DMAS responds that the Code prohibits consideration of extraneous material outside of the agency record on appeal.

"In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enter., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). Moreover, Code § 2.2-4027 provides, "[w]hen the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be to determine whether there was substantial evidence in the agency record to support the agency decision." Furthermore, "Code § 2.2-4027 allows the record to be supplemented by 'any allowable and necessary proofs adduced in court' only where there is no agency record." Crutchfield v. State Water Control Bd., 45 Va. App. 546, 556, 612 S.E.2d 249, 254 (2005). Therefore, "to allow parties to freely supplement the agency record after the agency has rendered a decision would authorize trial of the merits of the case *de novo*, resulting in the trial court making, not reviewing, the administrative decision." Id.

In the current matter, the hearing officer and director based their affirming decisions on the agency record that included evidentiary hearings and exhibits supporting the findings and determinations made. In its appeal of the final agency decision to the circuit court, LifeCare moved to open the evidence and enter Exhibit A. Despite LifeCare's contention that Exhibit A has probative weight, "to allow [LifeCare] to freely supplement the agency record after the

agency has rendered a decision would[] . . . result[] in the trial court making, not reviewing the administrative decision." Crutchfield, 45 Va. App. at 556, 612 S.E.2d at 254.  Accordingly, the circuit court did not err in denying LifeCare's motion to open the record.

## H.  Fees and Costs

LifeCare has asked for an award of fees and costs, which request is denied.

## IV.  CONCLUSION

Finding no error in the rulings of the circuit court, this Court affirms the circuit court.

Affirmed.