COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and O'Brien
Argued by videoconference

AARON WENDT

MEMORANDUM OPINION* BY
v.      Record No. 1042-20-2        CHIEF JUDGE MARLA GRAFF DECKER
APRIL 6, 2021

RICHARD D. HOLCOMB, COMMISSIONER,
 DEPARTMENT OF MOTOR VEHICLES

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Aaron Wendt, *pro se*.

Christian A. Parrish, Assistant Attorney General (Mark R. Herring,
Attorney General; Donald D. Anderson, Deputy Attorney General;
Julie M. Whitlock, Senior Assistant Attorney General/Section Chief,
on brief), for appellee.

Aaron Wendt appeals a ruling of the Circuit Court of Chesterfield County rejecting his

challenge to the suspension of his driver's license by the Virginia Department of Motor Vehicles

(DMV). He contends that the court erred when it dismissed the petition for appeal based on his

failure to exhaust his administrative remedies under the Virginia Administrative Process Act,

Code §§ 2.2-4000 to -4031 (APA), and his noncompliance with the contemporaneous objection

rule. We hold that the circuit court lacked subject matter jurisdiction to consider the appellant's

challenge to his license suspension pursuant to Code § 46.2-410. Consequently, we affirm the

circuit court's dismissal of the petition for appeal without considering the appellant's

assignments of error.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

In June and September of 2017, the appellant, who had a Texas driver's license, was convicted of two different driving offenses in Virginia. In the fall of 2017, he "surrendered" his Texas driver's license and obtained a Virginia license. At that time, the DMV recorded his 2017 Virginia convictions on his Virginia driving record. It then notified the appellant that he had a certain number of demerit points on his driving record based on those convictions. The DMV notification letter also indicated that he was being enrolled in the Virginia Driver Improvement Program. Further, the letter warned that the "DMV m[ight] take additional action if [he] continue[d] to receive convictions."

In June 2018, the appellant was convicted of speeding. Based on the resulting increase in his demerit point total, the DMV notified the appellant by letter that Virginia law required him to attend a driver improvement clinic. It also informed him that it was placing him on six months of driving "probation." The letter further explained that being convicted of another "demerit point" offense that occurred during the six-month probationary period would result in the suspension of his driving privilege.

The appellant successfully completed this six-month probation. He was then moved to an eighteen-month "control period" and was advised that if he was convicted of a "demerit point traffic violation committed during the control phase," he would be returned to another six-month probation period.

---

[1] On appeal, this Court views the evidence "in the light most favorable to sustaining the [agency's] action." Berglund Chevrolet, Inc. v. DMV, 71 Va. App. 747, 750 n.1 (2020) (quoting Lifecare Med. Transps., Inc. v. Va. Dep't of Med. Assistance Servs., 63 Va. App. 538, 544 (2014) (alteration in original)). Additionally, "the factual issues . . . are controlled solely by the agency record. The reviewing court is not free to take additional evidence . . . ." Sch. Bd. v. Nicely, 12 Va. App. 1051, 1062 (1991) (citing language in former Code § 9-6.14:17, now contained in Code § 2.2-4027).

During the eighteen-month control period, the appellant was charged with and convicted of another speeding offense. As a result, the DMV informed him by letter that it was placing him on a second six-month period of probation. The probation letter also notified him that if he was convicted of another demerit point traffic violation committed during the probationary period, his driving privilege would be suspended. The letter listed the statutory authority for the DMV's actions and provided a telephone number and web address for questions, just as each of the previous three letters had done.

During this second six-month probationary period, the appellant was charged with an act of improper driving that occurred during that period, and he was later convicted of that offense. As a result, by letter of December 31, 2019, the DMV notified the appellant, consistent with the terms outlined in the earlier letter, that it was imposing a forty-five-day license suspension beginning on January 30, 2020.

The appellant responded by filing a petition for appeal challenging the suspension in the circuit court. In the petition, the appellant alleged that the appeal was pursuant to the APA. Further, he contended that the suspension was invalid because he should not have been put in the driver improvement program in the first place. He asserted that the placement was improper because it was based in part on demerit points assigned to his Virginia driving record, upon his licensure in Virginia, for convictions that he had previously received in Virginia while still licensed in Texas. The appellant suggested that he was a nonresident of Virginia at the time and, consequently, that the DMV erred by placing those convictions on his Virginia driving record.

The DMV Commissioner filed a motion to dismiss the appeal, suggesting in part that the appellant had failed to exhaust his administrative remedies under the APA. The judge agreed with the Commissioner, concluding that in addition to the failure to exhaust, the appellant also failed to "raise any arguments before the DMV[,] resulting in [the circuit court's] inability to

consider the issues raised . . . for the first time on appeal." Accordingly, the court dismissed the petition.

## II. ANALYSIS

The appellant presents six assignments of error. The first five address various aspects of the circuit court's ruling that he failed to exhaust his administrative remedies. The sixth contests the court's holding that he waived the right to challenge the suspension of his driver's license because he failed to raise that issue with the DMV. We affirm the circuit court's dismissal of the petition for appeal without considering the appellant's assignments of error because we hold that the court did not have subject matter jurisdiction to review the specific license suspension.[2]

We reach this conclusion under well-established principles. Whether a court had subject matter jurisdiction is a question of law that an appellate court reviews *de novo*. Andrews v. Richmond Redev. & Hous. Auth., 292 Va. 79, 85 (2016). This same *de novo* standard applies to determining the proper meaning to be given the words in a statute. See id.

"Subject matter jurisdiction 'is the authority granted through constitution or statute to adjudicate a class of cases or controversies.'" Gray v. Binder, 294 Va. 268, 275 (2017) (quoting Morrison v. Bestler, 239 Va. 166, 169 (1990)). Whether a court had subject matter jurisdiction is a "'threshold'" issue, and "th[e] parties can neither waive nor confer [such] jurisdiction [on a court]." Knight v. Ottrix, 69 Va. App. 519, 523-24 (2018) (quoting Parrish v. Fed. Nat'l Mortg. Ass'n, 292 Va. 44, 49 (2016)). "[T]he lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court *sua sponte*." Watson v. Commonwealth, 297 Va. 347, 352 (2019) (quoting Morrison, 239 Va. at 170). If it is determined

---

[2] Because we affirm the dismissal based on the lack of subject matter jurisdiction, we do not consider the Commissioner's additional arguments in support of the ruling. See, e.g. Riddick v. Commonwealth, 72 Va. App. 132, 146 n.7 (2020) ("[J]udicial restraint dictates that [appellate courts] decide cases on the best and narrowest grounds available." (quoting Commonwealth v. White, 293 Va. 411, 419 (2017))).

- 4 -

that the lower court "lack[ed] subject matter jurisdiction, 'the only function remaining . . . is that of announcing the fact and dismissing the cause.'" See Riddick v. Commonwealth, 72 Va. App. 132, 141 (2020) (quoting Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church, 296 Va. 42, 50 (2018)).

In examining the issue of subject matter jurisdiction here, we note that the General Assembly creates administrative agencies and defines their powers. See Va. Const. art. III, § 1. Additionally, in certain cases, the legislature has "granted circuit courts appellate jurisdiction over appeals from the judgments and proceedings" of such administrative bodies. See Bd. of Supers. v. Bd. of Zoning Appeals, 271 Va. 336, 344-45 (2006) (construing a board of zoning appeals as an "inferior tribunal[]" within the meaning of this grant of appellate authority (citing Code § 17.1-513)); see also Tribunal, Black's Law Dictionary (11th ed. 2019) (defining both "tribunal" and "administrative tribunal").

More specifically, through Code § 17.1-513, the General Assembly has provided a broad grant of subject matter jurisdiction to the circuit courts to entertain administrative appeals. Further, one or more additional statutes may define the precise contours of that subject matter jurisdiction in particular areas of the law. See Bd. of Supers., 271 Va. at 344-45. In other words, Code § 17.1-513 operates in conjunction with other statutes that "grant[] authority to circuit courts" to review "final decision[s]" of *specific* "'inferior tribunals.'" See id. at 344. Pairing Code § 17.1-513 with such a provision causes the statutes to operate together to "confer . . . subject matter jurisdiction over the class" of specified appeals to the circuit courts. See id. at 344-45. When the legislature creates subject matter jurisdiction by statute, it also may "carve out *exceptions* to the general rule governing the judicial exercise of [that] jurisdiction." Burke v. Commonwealth, 29 Va. App. 183, 188 (1999) (emphasis added), quoted with approval in Carter v. Commonwealth, 31 Va. App. 393, 394 (2000) (published order).

The specific statute granting subject matter jurisdiction in this case is Code § 46.2-410.[3] This statute provides in pertinent part as follows:

> Any person aggrieved by an order or act of the [DMV] Commissioner requiring suspension or revocation of a license or registration under the provisions of this chapter is entitled to judicial review in accordance with the provisions of the [APA] (§ 2.2-4000 et seq.). No appeal shall lie in any case in which the suspension or revocation of the license or registration was mandatory except to determine the identity of the person concerned when the question of identity is in dispute.

Code § 46.2-410.[4] This language in Code § 46.2-410 creates the outer limits of the subject matter jurisdiction of courts hearing appeals of certain DMV decisions and delineates a clear exception. The first sentence grants a right of "judicial review" to a "person aggrieved" by a license suspension. Code § 46.2-410. The second sentence limits the scope of that review by providing that "[n]o appeal shall lie in any case in which the [license] suspension . . . was mandatory except to determine the identity of the person concerned when . . . identity is in dispute." Id. The legislature's words of limitation or exception, just like the initial grant, define the scope of the applicable subject matter jurisdiction. See Burke, 29 Va. App. at 188.

The decision of the Supreme Court of Virginia in Lamb v. Curry, 197 Va. 395 (1955), which involved an earlier version of Code § 46.2-410, provides support for this conclusion. See 197 Va. at 397-98. In Lamb, the Court held that the phrase "[n]o appeal shall lie" was "unequivocal" and that an appeal falling within the restrictive language had to be *dismissed*. Id. at 398 (analyzing former Code § 46-424). In a different context, the Court subsequently clarified that only jurisdictional errors permit *dismissal* of an appeal. See Smith v. Commonwealth, 281

---

[3] Code § 46.2-489 complements this statutory grant, providing that "[a]ny person receiving an order of the Commissioner to suspend or revoke his driver's license . . . may, within thirty days from the date of the order, file a petition of appeal in accordance with § 46.2-410."

[4] The statute further provides the petitioner or the Commissioner with "an appeal as of right to the Court of Appeals" from "the final decision of the circuit court." Code § 46.2-410.

Va. 464, 467-68 (2011) (citing Jay v. Commonwealth, 275 Va. 510, 517 (2008)). Construed together, these principles support our determination that the "[n]o appeal shall lie" language in Code § 46.2-410 defines the limits of the circuit court's subject matter jurisdiction.[5] Cf. also Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs., 283 Va. 190, 193, 197 (2012) (holding that a statute "provid[ing] that '[a]n appeal of right . . . shall lie to [a particular] circuit court'" constituted a grant of subject matter jurisdiction (quoting Code § 51.1-823)); Commonwealth v. Smith, 230 Va. 354, 361 (1985) (holding that a statute providing that a "writ of error shall lie from the Court of Appeals to any judgment of a circuit court refusing bail" established that the Court had subject matter jurisdiction over the appeal at issue (citing Code § 19.2-319)).

We next turn to whether the record in this case establishes that the circuit court had subject matter jurisdiction within the parameters defined by Code § 46.2-410. "[S]ubject matter jurisdiction 'must affirmatively appear on the face of the record . . . .'" Owusu v. Commonwealth, 11 Va. App. 671, 673 (1991) (quoting Shelton v. Sydnor, 126 Va. 625, 630 (1920)); see also Watson, 297 Va. at 352 (noting that subject matter jurisdiction is "a question of law" that "requires no factual development or eviden[ce]"). Here, a pure legal analysis confirms that subject matter jurisdiction was lacking under the two-part "[n]o appeal shall lie" language of Code § 46.2-410. See generally New Age Care, LLC v. Juran, 71 Va. App. 407, 414 (2020) (recognizing that in reviewing the dismissal of an APA petition, the appellate court views the facts pleaded as established and evaluates issues of statutory interpretation *de novo*).

_____

[5] Federal case decisions also provide support for this conclusion. See Meserey v. United States, 447 F. Supp. 548, 556 (D. Nev. 1977) (holding that a statutory "exception" characterized by the court as "provid[ing] that *no action shall lie* for" a particular type of federal administrative claim meant that the court "lack[ed] subject matter jurisdiction over th[e] claim" (emphasis added) (citing 28 U.S.C. § 2680(c))); see also JBP Acquisitions, LP v. United States, ex rel. FDIC, 224 F.3d 1260, 1263-64 (11th Cir. 2000) (holding with regard to a particular type of federal administrative claim that if a statutory exception applies, "the court lacks subject matter jurisdiction over the action"), cited with approval in Swafford v. United States, 839 F.3d 1365, 1369 (11th Cir. 2016).

The applicable language in Code § 46.2-410 provides that if the license suspension was *mandatory*, the only permitted basis for appeal is a dispute over identity. Working backward, it is uncontested that the nature of the claim in the appellant's petition did not concern a dispute over identity. He contended instead that the DMV lacked authority to place certain prior driving convictions on his Virginia driving record after he obtained his Virginia license. Thus, the remaining issue in determining whether the appellant had a right of appeal under Code § 46.2-410 concerns whether the challenged license suspension in this case was "mandatory" within the meaning of that code section. If the license suspension was mandatory, the circuit court lacked subject matter jurisdiction to consider an appeal of any issue other than one involving a dispute over identity.

To answer this question, the Court looks to the statutes themselves. Where a "statute's terms are undefined" by the legislature, we give those terms "their 'ordinary meaning,' in light of 'the context in which [they are] used.'" Va. Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 384 (2014) (alteration in original) (quoting Lawlor v. Commonwealth, 285 Va. 187, 237 (2013)). "In ascertaining such meaning, dictionary definitions and pertinent analysis in prior case law may be consulted." Eley v. Commonwealth, 70 Va. App. 158, 165 (2019).

Mandatory means "[r]equired or commanded by authority; obligatory." Mandatory, The American Heritage Dictionary of the English Language (5th ed. 2011). Virginia law commonly recognizes "a *mandatory* statute" as one that "uses a 'shall' command" and "carries with it a specific, exclusive remedy" rather than one involving the "exercise [of judicial] discretion in fashioning a . . . remedy." Rickman v. Commonwealth, 294 Va. 531, 537 (2017). The Supreme Court specifically analyzed the use of "mandatory" in Code § 46.2-410. See Commonwealth v. Shaffer, 263 Va. 428, 433 (2002). It concluded that the reference in Code § 46.2-410 to statutes that are mandatory encompassed a habitual offender statute providing that the Commissioner

"*shall* revoke the person's driver's license" if certain conditions were met. See id. (emphasis added) (quoting "[f]ormer" Code § 46.2-351); see also Lamb, 197 Va. at 396-98 (holding that "shall" as used in a statute requiring license revocation under specified circumstances rendered the revocation mandatory under an earlier version of Code § 46.2-410).

Here, as detailed below, the appellant's license suspension was triggered when he was convicted of a qualifying new offense committed while he was on probation. The official notice alerting him to that probationary period instructed him, in pertinent part, that if he was "convicted of a demerit point traffic violation committed during [his] probationary period, DMV w[ould] suspend [his] driving privilege for . . . 45 [d]ays" for a conviction worth three demerit points, as provided in Code § 46.2-499(A). The appellant was then convicted of an act of improper driving that occurred during the probationary period. This offense carried a value of three demerit points in the statutory Uniform Demerit Point System. See Code § 46.2-492(D)(3). The appellant's improper driving conviction and the resulting demerit points further implicated the suspension provisions of Code § 46.2-499. That statute provides in pertinent part that "[w]henever a person who has been placed on probation is convicted . . . of any offense for which demerit points are assessed, and the offense was committed during the probation period, the Commissioner *shall* suspend the person's license . . . for a period of forty-five days when three demerit points are assigned." Code § 46.2-499(A). As a result, by letter of December 31, 2019, the DMV notified the appellant that it was imposing a forty-five-day license suspension.

The plain language of Code § 46.2-499, stating that "the Commissioner *shall* suspend" the license of the person when three demerit points are assigned for the delineated period, is mandatory language. See Code § 46.2-499(A) (emphasis added). This language is mandatory because it constitutes a command and carries a specific "remedy" or consequence, one over

- 9 -

which no judicial or administrative officer has any discretion.  See Rickman, 294 Va. at 537;

Mandatory, American Heritage Dictionary, supra.

Consequently, under the plain language of Code § 46.2-499, the license suspension was

mandatory within the meaning of Code § 46.2-410, and the appellant, who did not contest his

identity, had no right of appeal at this stage of the proceedings.[6]

### III.  CONCLUSION

We hold that the circuit court lacked subject matter jurisdiction to address the DMV's

suspension of the appellant's license because the appellant's challenge did not relate to identity

and the suspension was mandatory.  Consequently, we affirm the circuit court's dismissal of the

petition without addressing the appellant's assignments of error.

Affirmed.

---

[6] This determination regarding jurisdiction does not mean that the appellant had no right
to challenge the DMV action he contests in his petition.  See generally Shaffer, 263 Va. at 431
(recognizing that while the right to operate a motor vehicle is "a conditional privilege" rather
than a "fundamental constitutional right," it "may not be revoked or suspended without due
process of law" (quoting Walton v. Commonwealth, 255 Va. 422, 428 (1998))).  Instead, he had
the right to challenge it at various earlier stages in the proceeding.  Code § 46.2-489 provided
him with the right to contest the "order of the Commissioner . . . requir[ing] attendance at a
driver improvement clinic or placing him on probation" by filing a petition of appeal within
thirty days from the date of the order "in accordance with § 46.2-410."  The record, however,
contains no indication that he ever attempted to appeal either type of order in this case.  Also, of
course, the appellant had the opportunity to contest each of the underlying driving convictions
that triggered the assessment of demerit points within the Virginia Driver Improvement Program.